Mr. Leong was a mail handler for the U.S. Postal Service for eight years. He was terminated for violating a so-called last chance agreement, which contained a provision which prohibited him from using profanity when addressing co-workers, even though some of the profanity that was the basis of the assertion that he violated the agreement was a reaction to profanity addressed to him. There's no assertion that he didn't competently do his job, just that he used profanity. He filed a timely claim with the Equal Employment Opportunity Commission, but failed to check the box for disability discrimination. In making his claim, because the Postal Service refused to allow him to go into the bulk mail facility where the EOC counselor was, he had to deal with the counselor by telephone, and he didn't check that particular box. He did timely file on the other ones. At the trial court, his disability discrimination claim... When you say didn't check the box... There's a bunch of little boxes. I know that, but how can you say that he made the claim if he didn't? That's the way you make the claim, isn't it? That's right. He did not make the claim. So that's all right. He did not make the claim. And at the trial court, two things happened. One, the disability claim was denied for failure to exhaust administrative remedies. Two, the other claims, summary judgment was granted. On the first claim, failure to exhaust administrative remedies, number one, it is submitted that to any lay person who interacted with this person, you would see he had some sort of mental disabilities. Now, for the purpose of exhausting administrative remedies, we are not saying that his supervisor should have known this. We're just saying that any lay person would have known this. His supervisor noted he had a problem and At his last, at his just cause meeting regarding the discipline, this particular discipline, his supervisor said he didn't even know what she was talking about and could only say in his defense that if someone crossed their eyes at him, he would say whatever. The shop steward said he couldn't communicate with this person regarding these claims against him. What these show, in my view, is that to a lay person, someone would have suspected something was mentally disabled with this person. Now, he didn't have, like many people who have a mental disability, they don't know they have a mental disability. So when you are asked to check a box as to whether or not you were discriminated against because of that mental disability, if you don't know you have it, you can't do it. But so are you now claiming that he did make the claim? No, I'm claiming he did not check that box. No, but he did he make the claim before the EEOC? He did not make the claim orally. I mean, he did not make the claim before he filed. So we don't have to consider that then. What is his lack of capacity? No, his claim. No, I'm saying what I am saying is and I'm getting to is that the government, because they precluded him from dealing with the EEOC counselor face to face, they should be equitably stopped from allowing him to assert that. And I'm saying that the EEOC. What you're saying is it's the responsibility of the counselor to fight to determine what the claims are for. I'm saying it's the responsibility of the counselor to counsel. And it's just like having a jury trial by telephone. You can't see the demeanor, interact with the person or whatnot, if all you can do is do it by telephone. Well, counsel, I'll accept that for the moment. But when he did find from the diagnosis that he had a mental disability, should he not have gone back to the EEOC and asked them to reopen the claim and seek equitable tolling there, not in our court? It's not before you, but he did. And they denied it. But it's not before you. Why isn't it before us? Because it happened after the fact, so to speak. Then he could have amended his complaint in district court, right? He went after the case was dismissed? Right. Couldn't he then have amended his complaint in district court if he did that? It was gone to amend. What do you mean gone? Dismissed. The trial or whatever. This case was, part of it was dismissed on a motion to dismiss. The entire case had been dismissed? Correct. He could have filed a new complaint. He may be able to, but it's not. Right. We're only talking about. That is remedy for that, for that, that alleged disability. I, it may be a remedy, but I also. To file a new complaint instead of trying to argue that there's some kind of, well, what are you arguing now? Stop while you have time. Yeah, that's my argument is to stop. What is the purpose of a counselor if you can't, if the counselor can't counsel is my point. I frankly think the purpose is to head off complaints. So they're not supposed to count. I don't know. You asked me what the purpose is. I'm telling you, I think it is to head off complaints. I think, well, it's to interact with the person to determine if there's a valid complaint, what the valid complaint is. But if you are not allowed to interact, you cannot do that. And you cannot interact over the telephone. But in effect, you're trying to charge a counselor with legal malpractice. I don't think it's going to. Well, I didn't. That's not going to fly. I didn't with me. I didn't. It wasn't the counselor's fault that she was not able to interact. It was the Postal Service's fault for precluding him from interacting with her. The bottom line is that is the argument on the lack of exhaustive administrative remedies. That only deals with the disability discrimination claim. The other claims which were denied on summary judgment. And we submit that there were genuine issues of material fact on a number of issues. Basically, the plaintiff has the burden to make a prima facie case. And really there's only one issue of the four elements of the prima facie case which was at issue. And that was whether similarly situated individuals outside his protected class were able to make a prima facie case. And the prima facie case has a very minimal proof needed. Did anyone else have a last chance settlement agreement that you're complaining about? No. However, there is a genuine issue of material fact whether in fact there was such an agreement in effect in this case. Because the anti-profanity portion of that agreement provides that if he goes to certain counseling, which he testified he did complete and the least, that provision is gone. And that happened before this occurred. So there is a question as to whether that is the correct comparator if it no longer existed at the time of this discipline. And I say there's a genuine issue of material fact as to whether that anti-profanity provision was in effect at this time. And therefore, it's not the correct comparator. There are other comparators that we listed of people who did similar things and much worse, physical activity, physical harm to other people who were treated much more leniently than he was. There's never any assertion he physically intimidated anyone or did anything. He did his job and he cussed people who cussed at him. That was the thing. He was terminated because of violating the anti-profanity provision of this agreement, which there's a genuine issue whether it was in effect at that time anymore. Once that provision was gone, that's not the comparator and it also is not a valid reason for terminating it. That it was in effect, did the agreement specify that, what did the agreement specify with regard to his profanity? It said you couldn't, this is a paraphrase, but you cannot address co-workers with profanity, something like that. Did it say anything about that you can do it, of course, if somebody else swears at you? No, but what it did say is if you complete these provisions, you don't have that preclusion anymore. And he did complete the required course to eliminate those provisions. And at least there's a tribal issue material fact in that case. He said he went to 20 different meetings, the counselor told him you were done, you've completed, you don't have to go anymore. You've got 30 seconds left. Anyway, if in fact he meets the slight burden, really, that he has on the prima facie case, then the government has the burden of articulating a legitimate nondiscriminatory business reason. The articulated ground was violation of this provision. If in fact the provision wasn't there anymore, they didn't articulate it. And at least there's a genuine issue of material fact on that question. What evidence raises that issue? Evidence of his testimony that, in fact, I went to 20 meetings, they told me I was completed, I was done, I didn't have to go anymore. And that his counselor, not counselor, but the person who did the meetings for him, told him that and said he was informing the government of the same. The government itself admitted it, never checked his file to see whether in fact he did or not. So if in fact he had completed, that provision was gone and he couldn't be terminated for that reason anymore. OK. You're over your time. Thank you very much. Thank you very much. We'll hear from the government. Good morning. And may it please the court. My name is Abraham Simmons, representing the defendant in Napoli in this case, John Potter, the postmaster general of the United States. Good morning. Listen, before you get on with your argument, so I don't forget it, respond to Mr. Rowland's last point that there's an issue of fact as to whether or not that last chance agreement was still in effect. Do you agree with that? No, Your Honor. The only question that was raised was whether someone had told Mr. Leong that he had, in fact, gone through the entire counseling session and didn't have to go anymore. What the last chance agreement required, which is in the excerpts of record, close to the end at 177, 178 thereabouts, is a certification from the EEAP that allowed him to put it in his file that he did not have to, that he completed the entire program. Okay. I'll finish your answer and then I want to... The judge picked up on that. And actually, it's pretty clearly in the order that what was required was not a counselor saying, don't come back anymore, but for him or someone to go to the record, to go to the EEAP, get a certification and get it into his file. When he was discharged, is there a written letter that's given to him giving the reasons for the discharge? Yes, there is. Tell me exactly what the wording of that is, can you? The discharge letter, I believe, actually appears in the excerpts as well. I will make an effort to try and find it because I do believe it does appear in here. I don't think I can quote the letter itself without... Maybe opposing counsel has it, do you? I don't have the cost of finding it. So I think that would be of interest to me. Okay. I will address just a couple of other points here and we'll, I suppose, make an effort to find it. It should be somewhere around page 133 of the excerpts of record. There were a couple of questions that were asked that I would like to address. One was, there was a statement actually that was made that Leong had just used profanity. If you look at the courts, at the excerpts of record at page 279 to 280, what was actually happening here was more than just the occasional use of profanity, but a prolonged and continued use of profanity along with finger gestures and disrespectful behavior, something that really went to sort of what was the underlying current of intimidation that was being dealt with. His supervisor said that his behavior was not notably more eccentric than that of many other postal employees. Yes, just prohibited as a result of the fact that he already had been terminated, but that in his, during the grievance procedure, that termination was taken back in exchange for his commitment to comply with the last chance agreement. This was not the first time that Mr. Leong had been through the process. Also there was some question as to whether the agreement was in effect. Let's not forget that he told his supervisor, listen, I will not, I wasn't doing all of this. I was not yelling and screaming and cursing at everyone. I'm under a last chance agreement. So he admitted and he knew that he was under the agreement. So the argument here in court is that there may have been a technical defect there, one that neither he nor his supervisor knew anything about. Judge Fletcher, you asked the question about whether he should have gone back to the EEOC with his claim, and we believe that that is in fact the state of the law. If we look at the Santa Maria case and the Somatimo case, that is what's necessary. There was also the question as to whether a layperson would have known that he had a disability. Let's not forget that there was a, when he did get his job, he was examined by a doctor. In the supplemental excerpts of record appears the fact that the doctor checked off that he had no disability. So not only are we saying that a layperson may have found that he had a disability, but that he would have been better than a doctor examining him for that specific condition. Is the reason for the termination then substantially as a result of the last chance agreement? So if it's not there, there isn't a basis? Does it depend on the last chance agreement? Well, Your Honor, in this case, the question, it would raise a question of fact, we think, if he was fired for reasons other than the last chance agreement. However, in this case, it was his violation of the last chance agreement. Well, but that also goes, that also goes to the legitimate reason and the pretext issue because I think part of your case is that, well, you know, he doesn't compare to the other people he tries to compare with because they were not under a last chance agreement. Yes, Your Honor. Goes to that issue too, right? Yes, Your Honor. If there is no last chance agreement. Correct. Not whether there is or is not, but whether or not the supervisor actually came to the conclusion that he had violated it. The notice of removal is dated January 28th and appears at page 142 of the excerpts of record. And it states, you are hereby notified that you are removed from the U.S. Postal Service 30 days from receipt of this notice. This action is based on the following reasons. Charge, violation of last chance agreement. Open parens, conduct unbecoming of postal employee, backslash, use of profanity towards fellow employees, backslash, failure to follow instructions and parens. It is a four-page letter that is signed by the official that is being accused of discrimination in this case. And it very clearly states it is the last chance agreement that forms the basis for the decision. Now, would you agree then that if, in fact, he was no longer under that last chance agreement, that he couldn't be discharged for that reason? We would not concede that, Your Honor. We think it's unimportant for the simple reason that there was no question in the mind of the official and in the mind of Mr. Leong that he was, in fact, under the last chance agreement. There's no question of fact with respect to that issue. So he does not get to raise a question of fact as to whether there was an ulterior motive, rather discrimination, as opposed to that last chance agreement unless he shows not just that there was no agreement, but that Ms. Sandhu, the official who was disciplining him, somehow knew that there was no last chance agreement. All that having been said, we think that that's a question you don't need to get to because clearly the last chance agreement was still in effect. Also with respect to the... If it were not, one fact that stuck out in my mind was that Sandhu was aware of the fact that Souders started the swearing disagreement, yet the supervisor, Sandhu, only proceeded against Leong and not Souders. Correct, Your Honor. In this case, there was no question that what we were dealing with with respect to Mr. Leong was a continued use of profanity that occurred over many days. That you can see in the excerpts of record in the judge's decision on pages 3 and 4 where she outlines this was not just a single case. On the other hand, with respect to Souders, she actually did discipline him. It just was not the same type of discipline and it was not the same charge that was being brought. When she began to speak to Mr. Leong the same way she began to speak to Mr. Souders, that's when she discovered not only am I dealing with continued reporting over the course of several months of the same problem, I'm also dealing with the last chance agreement in which he had consistently agreed not to engage in such content. So the question was actually addressed by the judge, by Magistrate Judge LaPorte, where she said this is simply not the same. He's not a similarly situated person from Souders in that situation because the single comment that was written down was not the same as what happened with Mr. Leong over the several months. With that, if there are further questions. Okay, thank you Mr. Simmons. Thank you very much. Thank you Mr. Rowland. This case is now submitted for decision. Thank you. Next case on the calendar is Cazares Gutierrez versus Ashcroft.
judges: Hug, B Fletcher, Tashima